**Opinion issued July 1, 2021**



In The

# Court of Appeals

### For The

# First District of Texas

————————————

### NO. 01-20-00861-CV

———————————

## RICHARD KIM, M.D., Appellant

## V.

## ALBERTO RAMOS, Appellee

On Appeal from the 189th District Court
Harris County, Texas
Trial Court Case No. 2020-22753

## O P I N I O N

In this interlocutory appeal,[1] appellant, Richard Kim, M.D., challenges the

trial court's orders granting the motions for extension of time to serve an expert

report filed by appellee, Alberto Ramos, and denying Dr. Kim's motion to dismiss

---

[1] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(9).

the health care liability claim[2] brought against him in Ramos's suit for negligence. In two issues, Dr. Kim contends that the trial court erred in granting the motions for extension of time to serve an expert report and denying his motion to dismiss Ramos's claim against him.

We affirm in part and dismiss in part.

## Background

On April 10, 2020, Ramos filed his petition, alleging that on or about April 16, 2018, he was a patient of Dr. Kim, and Dr. Kim performed a circumcision surgery on Ramos. The circumcision surgery was not performed properly, and Ramos was injured. Ramos brings a health care liability claim against Dr. Kim, alleging that Dr. Kim was negligent in performing the circumcision surgery, his performance fell below the standard of care, and Dr. Kim's negligence proximately caused Ramos's injuries. Ramos seeks damages for past and future medical expenses, past and future pain and mental anguish, past and future physical impairment, and past and future disfigurement.

On May 8, 2020, Dr. Kim answered, generally denying the allegations in Ramos's petition and asserting various defenses.

---

[2] *See id.* § 74.001(a)(13) (defining "[h]ealth care liability claim" (internal quotations omitted)).

2

On September 3, 2020, Ramos filed a motion to extend time to serve an expert report "pursuant to the Texas Supreme Court's Twenty-Second Emergency Order Regarding the COVID-19 State of Disaster" (the "first motion for extension of time to serve an expert report").[3] In his motion, Ramos explained that on August 6, 2020, the Texas Supreme Court entered its Twenty-Second Emergency Order Regarding the COVID-19 State of Disaster (the "Twenty-Second Emergency Order") which stated, in pertinent part:

> Subject only to constitutional limitations, all courts in Texas may in any case, civil or criminal—and must to avoid risk to court staff, parties, attorneys, jurors, and the public—without a participant's consent: . . . modify or suspend any and all deadlines and procedures, whether prescribed by statute, rule, or order, for a stated period ending no later than September 30, 2020[.][4]

The motion also stated that Ramos's trial counsel had tested positive for COVID-19[5] in August 2020 and "missed over three weeks of work due to quarantining from the

---

[3] The original deadline for Ramos to serve an expert report on Dr. Kim was September 8, 2020. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a); TEX. R. CIV. P. 4 ("Computation of Time"); *see also Univ. of Tex. Med. Branch at Galveston v. Callas*, 497 S.W.3d 58, 62–64 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (Texas Rule of Civil Procedure 4 used to calculate section 74.351(a)'s 120-day service deadline for expert report); *Carpinteyro v. Gomez*, 403 S.W.3d 508, 510–12 (Tex. App.—San Antonio 2013, pet. denied) (Texas Rule of Civil Procedure 4 provides method for computing section 74.351(a)'s expert report deadline when 120th day falls on Saturday, Sunday, or legal holiday).

[4] *See* Supreme Court of Texas, Twenty-Second Emergency Order Regarding the COVID-19 State of Disaster, Misc. Docket No. 20-9095, 609 S.W.3d 129, 129 (Tex. 2020).

[5] COVID-19 is a disease caused by a novel coronavirus. *See In re State*, 602 S.W.3d 549, 550–51 (Tex. 2020) (orig. proceeding) (noting first reported case of COVID-19

illness."[6]  Ramos requested that the trial court extend the deadline for him to serve an expert report to September 30, 2020.

In his response to Ramos's first motion for extension of time to serve an expert report, Dr. Kim "object[ed] to th[e] extension because [Ramos] . . . failed to provide any evidentiary support showing that the risk of COVID-19 [was] the reason for the

in United States was in January 2020 and virus can cause extreme symptoms, requiring hospitalization, use of ventilator, and long stays in intensive care unit); *see also United States v. Hansen*, No. EP-12-CR-314-PRM, 2020 WL 7487836, at *4 (W.D. Tex. Dec. 10, 2020) (mem. op. and order) ("According to the [Center for Disease Control], COVID-19, a highly contagious respiratory illness, spreads through close contact with other people and through respiratory droplets produced when an infected person coughs or talks."); *Valentine v. Collier*, 490 F. Supp. 3d 1121, 1129–31 (S.D. Tex. 2020) (order) (taking judicial notice of following: "Coronavirus disease 2019 ('COVID-19') is an infectious disease caused by severe acute respiratory syndrome coronavirus 2 ('SARS-CoV-2')"; "[the] novel coronavirus has spread around the world since the end of 2019, resulting in a global pandemic"; "[c]ommon symptoms of COVID-19 include, but are not limited to, fever, cough, fatigue, shortness of breath, and loss of smell and taste"; "while [some] cases result in mild symptoms, other cases may progress to acute respiratory distress syndrome ('ARDS'), multi-organ failure, septic shock, blood clots, other serious illnesses, and death"; "COVID-19 is highly communicable and primarily spreads between people through close proximity or contact"; "COVID-19 is also particularly transmissible because of its long incubation period of up to two weeks, as well as its asymptomatic or presymptomatic presentation in many individuals, which allows infected individuals to unknowingly spread the virus while exhibiting only mild or even no symptoms"; and "[t]here is no . . . cure for COVID-19"), *rev'd on other grounds*, 993 F.3d 270 (5th Cir. 2021); *United States v. Morris*, 452 F. Supp. 3d 484, 490 (N.D. Tex. 2020) ("COVID-19, as coronavirus disease 2019 is known, is an infectious disease caused by a new virus, which causes respiratory illness and has resulted in [millions] of deaths around the world.").

[6]  *See United States v. Briggs*, No. 2:07-CR-2063-LRS-1, 2020 WL 7265850, at *3 (E.D. Wash. Dec. 10, 2020) (order) ("The [Center for Disease Control] recommends that those who test positive for COVID-19 stay home, quarantine, and monitor symptoms.").

delay." Yet Dr. Kim recognized in his response that the Texas Supreme Court's Twenty-Second Emergency Order allowed the trial court, "in its sole discretion, the ability to extend any and all deadlines for a specified period that it sees fit."

On September 14, 2020, the trial court granted Ramos's first motion for extension of time to serve an expert report and ordered Ramos to serve his expert report on Dr. Kim by September 30, 2020.[7]

On September 30, 2020, Ramos filed a second motion to extend time to serve an expert report "pursuant to the Texas Supreme Court's Twenty-Sixth Emergency Order Regarding the COVID-19 State of Disaster" (the "second motion for extension of time to serve an expert report"). In his motion, Ramos explained that on September 18, 2020, the Texas Supreme Court entered its Twenty-Sixth Emergency Order Regarding the COVID-19 State of Disaster (the "Twenty-Sixth Emergency Order") which stated, in pertinent part:

> Subject only to constitutional limitations, all courts in Texas may in any case, civil or criminal—and must to avoid risk to court staff, parties, attorneys, jurors, and the public—without a participant's consent: . . . modify or suspend any and all deadlines and procedures, whether prescribed by statute, rule, or order, for a stated period ending no later than December 1, 2020[.][8]

---

[7] In this appeal, Dr. Kim does not attempt to appeal from the trial court's September 14, 2020 interlocutory order granting Ramos's first motion for extension of time to serve an expert report. *See* TEX. R. APP. P. 25.1(c), (d) (notice of appeal must identify date or order appealed from), 26.1 (time to perfect appeal).

[8] *See* Supreme Court of Texas, Twenty-Sixth Emergency Order Regarding the COVID-19 State of Disaster, Misc. Docket No. 20-9112, 609 S.W.3d 135, 135 (Tex. 2020).

5

The motion also stated that Ramos's trial counsel had tested positive for COVID-19 in August 2020 and "missed over three weeks of work due to quarantining from the illness." Ramos requested that the trial court extend the deadline for him to serve an expert report to December 1, 2020.

In his response to Ramos's second motion for extension of time to serve an expert report, Dr. Kim "object[ed] to th[e] extension because [Ramos] fail[ed] to provide any support showing that the risk of COVID-19 [was] the reason for th[e] undue delay." Although Dr. Kim acknowledged that the trial court had discretion to extend the expert-report deadline, Dr. Kim asserted that the trial court should not "exercise its ability to grant an extension of [the] civil deadline."

On October 23, 2020, the trial court granted Ramos's second motion for extension of time to serve an expert report and ordered Ramos to serve his expert report on Dr. Kim by December 1, 2020.

On November 30, 2020, Ramos filed a third motion to extend time to serve an expert report "pursuant to the Texas Supreme Court's Twenty-Ninth Emergency Order Regarding the COVID-19 State of Disaster" (the "third motion for extension of time to serve an expert report"). In his motion, Ramos explained that on November 11, 2020, the Texas Supreme Court entered its Twenty-Ninth Emergency Order Regarding the COVID-19 State of Disaster (the "Twenty-Ninth Emergency Order") which stated, in pertinent part:

> Subject only to constitutional limitations, all courts in Texas may in any case, civil or criminal—and must to avoid risk to court staff, parties, attorneys, jurors, and the public—without a participant's consent:  . . . modify or suspend any and all deadlines and procedures, whether prescribed by statute, rule, or order, for a stated period ending no later than February 1, 2021[.][9]

The motion also stated that Ramos's trial counsel had tested positive for COVID-19 in August 2020 and "missed over three weeks of work due to quarantining from the illness."  Ramos requested that the trial court extend the deadline for him to serve an expert report to February 1, 2021.

In his response to Ramos's third motion for extension of time to serve an expert report, Dr. Kim objected to the extension "because [Ramos] fail[ed] to provide any . . . support showing that the risk of COVID-19 [was] the reason for [Ramos's] failure to meet the [c]hapter 74 expert report deadline and cause th[e] undue delay."  Dr. Kim asserted that the trial court should not "exercise its ability to grant an extension of [the] civil deadline."

Dr. Kim then moved to dismiss Ramos's health care liability claim against him for failure to timely serve him with an expert report.  Dr. Kim asserted that Ramos had brought a health care liability claim against him and Ramos was required to serve an expert report on Dr. Kim within 120 days of Dr. Kim filing his original

---

[9]     *See* Supreme Court of Texas, Twenty-Ninth Emergency Order Regarding the COVID-19 State of Disaster, Misc. Docket No. 20-9135, --- S.W.3d ---, 2020 WL 8881660, at *1 (Tex. Nov. 11, 2020).

answer. Dr. Kim stated that "Texas law [was] clear that if a sufficient expert report [was not] served within the 120[-]day post-filing deadline, the claim[] against [the] defendant [physician] must be dismissed with prejudice and costs and attorney['s] fees awarded to th[e] defendant." Because Ramos had not served Dr. Kim with an expert report by the time Dr. Kim filed his motion to dismiss, Dr. Kim asserted that he was entitled to dismissal of Ramos's claim against him.

On December 14, 2020, the trial court granted Ramos's third motion for extension of time to serve an expert report and ordered Ramos to serve his expert report on Dr. Kim by February 1, 2021. On December 22, 2020, the trial court denied Dr. Kim's motion to dismiss Ramos's health care liability claim against him, stating that Ramos's deadline to serve an expert report on Dr. Kim had not yet expired.

**Motions for Extension**

In his first issue, Dr. Kim argues that the trial court erred in granting Ramos's second and third motions for extension of time to serve an expert report because Ramos "did not provide evidence proving that a 'disaster caused delay.'"[10] We first

---

[10] Ramos filed three motions for extensions of time to serve an expert report. In his notice of appeal, Dr. Kim states that he is appealing the trial court's October 23, 2020 interlocutory order granting Ramos's second motion for extension time to serve an expert report and the trial court's December 14, 2020 interlocutory order granting Ramos's third motion for extension of time to serve an expert report. Dr. Kim filed his notice of appeal on December 30, 2020, and, thus, failed to timely appeal the trial court's October 23, 2020 interlocutory order. *See* TEX. R. APP. P. 26.1 (time to perfect appeal). Generally, if a party fails to timely file a notice of

8

must consider whether we have jurisdiction to review the trial court's interlocutory orders granting Ramos's second and third motions for extension of time to serve an expert report.

"[C]ourts always have jurisdiction to determine their own jurisdiction." *Heckman v. Williamson Cty.*, 369 S.W.3d 137, 146 n.14 (Tex. 2012) (internal quotations omitted); *see also M.O. Dental Lab v. Rape*, 139 S.W.3d 671, 673 (Tex. 2004) (reviewing court is obligated to review issues affecting jurisdiction); *Royal Indep. Sch. Dist. v. Ragsdale*, 273 S.W.3d 759, 763 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (jurisdiction fundamental in nature and cannot be ignored). Whether we have jurisdiction is a question of law, which we review de novo. *See Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 840 (Tex. 2007). If there is a portion of an appeal over which we have no jurisdiction, that portion must be dismissed. *See Ragsdale*, 273 S.W.3d at 763; *see, e.g.*, *Johnson v. Gutierrez*, No. 01-18-00068-CV, 2018 WL 6053623, at *1–4 (Tex. App.—Houston [1st Dist.] Nov. 20, 2018, no pet.) (mem. op.) (dismissing for lack of jurisdiction portion of interlocutory appeal).

---

appeal, we do not have jurisdiction to address the merits of the party's appeal. *See Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 737–38 (Tex. 2001); *Brashear v. Victoria Gardens of McKinney, L.L.C.*, 302 S.W.3d 542, 545–46 (Tex. App.— Dallas 2009, no pet.) (timely filing of notice of appeal is jurisdictional prerequisite).

9

Generally, appeals may be taken only from final judgments. *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001). But an appellate court has jurisdiction to consider an immediate appeal of an interlocutory order if a statute explicitly provides such jurisdiction. *Koseoglu*, 233 S.W.3d at 840; *Bally Total Fitness Corp. v. Jackson*, 53 S.W.3d 352, 352 (Tex. 2001).

In a suit involving a health care liability claim, an interlocutory order denying a motion to dismiss for failure to timely serve an expert report under Texas Civil Practice and Remedies Code section 74.351(b)[11] is immediately appealable. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(9); *Certified EMS, Inc. v. Potts*, 355 S.W.3d 683, 688 (Tex. App.—Houston [1st Dist.] 2011) ("Section 51.014(a)(9) of the Texas Civil Practice and Remedies Code authorizes an interlocutory appeal from an order that denies all or part of the relief sought by a motion under [Texas Civil Practice and Remedies Code section 74.351(b). If no report is filed by the deadline, a defendant may properly appeal an order denying its motion to dismiss." (internal citations omitted)), *aff'd*, 392 S.W.3d 625 (Tex. 2013); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(10) (permitting interlocutory appeal of order that "grants relief sought by a motion under [Texas Civil Practice and Remedies

---

[11]    *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b) ("If, as to a defendant physician . . . , an expert report has not been served within the [prescribed] period . . . , the court, on the motion of the affected physician . . . , shall . . . enter an order that . . . dismisses the [health care liability] claim with respect to the physician . . . , with prejudice to the refiling of the claim.").

10

Code] [s]ection 74.351(l)"). But Texas Civil Practice and Remedies Code section 51.014 expressly disallows an appeal from an order granting an extension related to an expert report. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(9) (permitting interlocutory appeal order that "denies all or part of the relief sought by a motion [to dismiss] under [Texas Civil Practice and Remedies Code] [s]ection 74.351(b)," except that appeal may not be taken from interlocutory order granting extension); *Ogletree v. Matthews*, 262 S.W.3d 316, 321 (Tex. 2007) ("[T]he statute plainly prohibits interlocutory appeals of orders granting extensions . . . ."); *Mann v. Merritt*, No. 14-18-00482-CV, 2018 WL 3652821, at *1 (Tex. App.—Houston [14th Dist.] Aug. 2, 2018, no pet.) (mem. op.) ("The order effectively grants an extension to file an expert report and, therefore, is not an appealable interlocutory order."); *see also Academy of Oriental Med., L.L.C. v. Andra*, 173 S.W.3d 184, 185–86 (Tex. App.—Austin 2005, no pet.) ("Because section 51.014's authorizing of interlocutory appeals is a narrow exception to the general rule that only final judgments and orders are appealable, we must strictly construe it.").

We have only been given limited jurisdiction to review certain interlocutory orders arising in the context of health care liability claims. *Wyrick v. Johnson*, No. 02-18-00104-CV, 2018 WL 3385870, at *3 (Tex. App.—Fort Worth July 12, 2018, no pet.) (mem. op.); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(9), (10); *Du Bois v. Irfan*, No. 14-15-01032-CV, 2016 WL 1533746, at *1 (Tex. App.—

11

Houston [14th Dist.] Apr. 14, 2016, no pet.) (mem. op.) (in health care liability suit, holding court lacked jurisdiction over interlocutory appeal of order that was "neither an order denying relief sought by a motion under [Texas Civil Practice and Remedies Code section] 74.351(b), nor one granting relief sought by a motion under section 74.351(l)"). Dr. Kim has not directed this Court to any statutory authority that would permit his appeal of the trial court's interlocutory orders granting Ramos's second and third motions for extension of time to serve an expert report. *See Bally Total Fitness*, 53 S.W.3d at 352; *Merrit v. Methodist Hosp.*, No. 14-19-00340-CV, 2019 WL 3943248, at *1 (Tex. App.—Houston [14th Dist.] Aug. 20, 2019, no pet.) (mem. op.) ("Unless a statutory exception applies, the [interlocutory] order may not be appealed."). Thus, we hold that we lack jurisdiction to review the trial court's interlocutory orders granting Ramos's second and third motions for extension of time to serve an expert report. *See Wyrick*, 2018 WL 3385870, at *4 ("The trial court's order does not fall within any of the statutory grants of jurisdiction over interlocutory, healthcare-liability orders.").

## Motion to Dismiss

In his second issue, Dr. Kim argues that the trial court erred in denying his motion to dismiss Ramos's health care liability claim against him because Ramos failed to timely serve him with an expert report.

We review a trial court's decision on a motion to dismiss a health care liability claim for an abuse of discretion. *See Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001); *Gray v. CHCA Bayshore L.P.*, 189 S.W.3d 855, 858 (Tex. App.—Houston [1st Dist.] 2006, no pet.). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to guiding rules or principles. *Jelinek v. Casas*, 328 S.W.3d 526, 539 (Tex. 2010). A trial court has no discretion in determining what the law is or in applying the law to the facts. *See Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) ("[A] clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion.").

We review questions of law de novo. *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009); *Owens v. Handyside*, 478 S.W.3d 172, 180 (Tex. App.—Houston [1st Dist.] Oct. 8, 2015, pet. denied). To the extent an issue involves statutory interpretation or the legal effect of a court order, we apply a de novo standard of review. *See Stockton v. Offenbach*, 336 S.W.3d 610, 615 (Tex. 2011); *Owens*, 478 S.W.3d at 180; *Clay Expl., Inc. v. Santa Rosa Operating, LLC*, 442 S.W.3d 795, 798 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

Under the Texas Medical Liability Act, a plaintiff asserting a health care liability claim must timely serve each defendant physician with at least one expert report, with a curriculum vitae for the expert whose opinion is offered, to substantiate

13

the merits of the plaintiff's claim. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a)

("In a health care liability claim, a claimant shall, not later than the 120th day after

the date each defendant's original answer is filed, serve on that party or the party's

attorney one or more expert reports, with a curriculum vitae of each expert listed in

the report for each physician . . . against whom a liability claim is asserted."); *see

also Mangin v. Wendt*, 480 S.W.3d 701, 705 (Tex. App.—Houston [1st Dist.] 2015,

no pet.). If a plaintiff fails to timely serve an expert report, then, on the motion of a

defendant physician, the trial court must dismiss the health care liability claim

against the defendant with prejudice and award attorney's fees and costs. TEX. CIV.

PRAC. & REM. CODE ANN. § 74.351(b); *Baty v. Futrell*, 543 S.W.3d 689, 692 (Tex.

2018); *Owens*, 478 S.W.3d at 181. There is no deadline to file a motion to dismiss

for failure to timely serve a chapter 74 expert report. *Jernigan v. Langley*, 111

S.W.3d 153, 156 (Tex. 2003); *Owens*, 478 S.W.3d at 181.

Because of the onset of the COVID-19 pandemic, on March 13, 2020, Texas

Governor Greg Abbott issued a proclamation under the Texas Disaster Act of 1975,[12]

certifying that "COVID-19 pose[d] an imminent threat of disaster" in all 254 Texas

counties.[13] *See* The Governor of the State of Tex., Proclamation No. 41-3720, 45

---

[12]    *See* TEX. GOV'T CODE ANN. § 418.001–.261.

[13]    *See In re State ex rel. Ogg*, 618 S.W.3d 361, 364 (Tex. Crim. App. 2021) (explaining
       "the country is in the middle of a pandemic due to the virus known as COVID-19
       and . . . this pandemic has caused the Governor to declare a disaster"); *see also
       United States v. Mitchell*, Criminal Action No. 08-807, 2020 WL 7181118, at *1

Tex. Reg. 2087, 2094–95 (2020); *In re Hotze*, No. 20-0739, --- S.W.3d ---, 2020 WL 5919726, at *1 (Tex. Oct. 7, 2020); *In re Landstar Ranger, Inc.*, No. 06-20-00047-CV, 2020 WL 5521136, at *4 (Tex. App.—Texarkana Sept. 15, 2020, orig. proceeding) (mem. op.); *see also* TEX. GOV'T CODE ANN. § 418.014 ("Declaration of State of Disaster"); *State v. El Paso Cty*, 618 S.W.3d 812, 815 (Tex. App.—El Paso 2020, orig. proceeding [mand. dism'd]) (noting Governor Abbott renewed his disaster proclamation each month). On March 13, 2020, the Texas Supreme Court issued its First Emergency Order Regarding the COVID-19 State of Disaster under Texas Government Code section 22.0035(b).[14] *See* Supreme Court of Texas, First Emergency Order Regarding the COVID-19 State of Disaster, Misc. Docket Nos. 20-9042, 20-007, 596 S.W.3d 265, 265–66 (Tex. 2020); *see also Lira v. State*, No. 11-20-00148-CR, --- S.W.3d ---, 2021 WL 924893, at *2 (Tex. App.— Eastland Mar. 11, 2021, pet. granted) (mem. op.) (noting Seventeenth Emergency Order Regarding COVID-19 State of Disaster enacted pursuant to authority granted

---

(E.D. Pa. Dec. 7, 2020) (mem. op.) ("Since the first cases of an unknown respiratory illness were reported in December 2019, a localized outbreak of coronavirus disease 2019 ('COVID-19') has quickly evolved into a global pandemic, causing a public health emergency of international concern. [As of December 1, 2020,] [t]he World Health Organization ('WHO') . . . reported over 62 million confirmed cases of COVID-19 across the six continents, including more than 1.46 million deaths. In the United States alone, [as of December 1, 2020], confirmed cases . . . exceed[ed] 13.6 million, and deaths surpass[ed] 268,000." (internal citations omitted)).

[14] *See* TEX. GOV'T CODE ANN. § 22.0035(b) (permitting Texas Supreme Court to modify or suspend procedures for conduct of any court proceeding "affected by a disaster during the pendency of a disaster declared by the governor").

to supreme court in Texas Government Code section 22.0035(b)); *In re Landstar Ranger*, 2020 WL 5521136, at \*4. That order recognized that "Governor Abbott ha[d] declared a state of disaster in all 254 counties in the State of Texas in response to the imminent threat of the COVID-19 pandemic." Supreme Court of Texas, First Emergency Order Regarding the COVID-19 State of Disaster, 596 S.W.3d at 265. And it stated that,

> [s]ubject only to constitutional limitations, *all courts* in Texas *may in any case, civil* or criminal—and must to avoid risk to court staff, parties, attorneys, jurors, and the public—without a participant's consent: . . . *[m]odify or suspend any and all deadlines and procedures, whether prescribed by statute, rule, or order*, for a stated period ending not later than 30 days after the Governor's state of disaster has been lifted . . . .

*Id.* (emphasis added).

On April 10, 2020, Ramos filed his petition naming Dr. Kim as a defendant in Ramos's suit involving a health care liability claim. Dr. Kim filed his original answer on May 8, 2020, and September 8, 2020 became the original deadline for Ramos to serve an expert report on Dr. Kim. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) ("In a health care liability claim, a claimant shall, not later than the 120th day after the date each defendant's original answer is filed, serve on that party or the party's attorney one or more expert reports, with a curriculum vitae of each expert listed in the report for each physician . . . against whom a liability claim is asserted."); TEX. R. CIV. P. 4 ("Computation of Time"); *see also Univ. of Tex.*

16

*Med. Branch at Galveston v. Callas*, 497 S.W.3d 58, 62–64 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (Texas Rule of Civil Procedure 4 used to calculate section 74.351(a)'s 120-day service deadline for expert report); *Carpinteyro v. Gomez*, 403 S.W.3d 508, 510–12 (Tex. App.—San Antonio 2013, pet. denied) (Texas Rule of Civil Procedure 4 provides method for computing section 74.351(a)'s expert report deadline when 120th day falls on Saturday, Sunday, or legal holiday).

On August 6, 2020, the Texas Supreme Court issued its Twenty-Second Emergency Order, under Texas Government Code section 22.0035(b),[15] recognizing that "Governor Abbott ha[d] declared a state of disaster in all 254 counties in the State of Texas in response to the imminent threat of the COVID-19 pandemic" and stating that,

> [s]ubject only to constitutional limitations, *all courts* in Texas *may in any case, civil* or criminal—and must to avoid risk to court staff, parties, attorneys, jurors, and the public—without a participant's consent: . . . *modify or suspend any and all deadlines and procedures, whether prescribed by statute, rule, or order*, for a stated period ending no later than September 30, 2020[.]

Supreme Court of Texas, Twenty-Second Emergency Order Regarding the COVID-19 State of Disaster, Misc. Docket No. 20-9095, 609 S.W.3d 129, 129 (Tex. 2020) (emphasis added).

---

[15] *See id.*

17

On September 3, 2020, Ramos filed his first motion for extension of time to serve an expert report "pursuant to the Texas Supreme Court's Twenty-Second Emergency Order." In accord with the Texas Supreme Court's emergency order, Ramos requested that the trial court extend the deadline for him to serve an expert report to September 30, 2020. Ramos noted that his trial counsel had tested positive for COVID-19 in August 2020 and had missed work due to quarantining. The trial court granted Ramos's first motion for extension of time to serve an expert report and ordered Ramos to serve his expert report on Dr. Kim by September 30, 2020.

On September 18, 2020, the Texas Supreme Court issued its Twenty-Sixth Emergency Order, under Texas Government Code section 22.0035(b),[16] again recognizing that "Governor Abbott ha[d] declared a state of disaster in all 254 counties in the State of Texas in response to the imminent threat of the COVID-19 pandemic" and stating that,

> [s]ubject only to constitutional limitations, *all courts* in Texas *may in any case, civil* or criminal—and must to avoid risk to court staff, parties, attorneys, jurors, and the public—without a participant's consent: . . . *modify or suspend any and all deadlines and procedures, whether prescribed by statute, rule, or order*, for a stated period ending no later than December 1, 2020[.]

---

[16]     *See id.*

18

Supreme Court of Texas, Twenty-Sixth Emergency Order Regarding the COVID-19 State of Disaster, Misc. Docket No. 20-9112, 609 S.W.3d 135, 135 (Tex. 2020) (emphasis added).

On September 30, 2020, Ramos filed his second motion for extension of time to serve an expert report "pursuant to the Texas Supreme Court's Twenty-Sixth Emergency Order." In accord with the Texas Supreme Court's emergency order, Ramos requested that the trial court extend the deadline for him to serve an expert report to December 1, 2020. Ramos noted that his trial counsel had tested positive for COVID-19 in August 2020 and had missed work due to quarantining. The trial court granted Ramos's second motion for extension of time to serve an expert report and ordered Ramos to serve his expert report on Dr. Kim by December 1, 2020.

On November 11, 2020, the Texas Supreme Court issued its Twenty-Ninth Emergency Order, under Texas Government Code section 22.0035(b),[17] recognizing that "Governor Abbott ha[d] declared a state of disaster in all 254 counties in the State of Texas in response to the imminent threat of the COVID-19 pandemic" and stating that,

> [s]ubject only to constitutional limitations, *all courts* in Texas *may in any case, civil* or criminal—and must to avoid risk to court staff, parties, attorneys, jurors, and the public—without a participant's consent: . . . *modify or suspend any and all deadlines and procedures, whether prescribed by statute, rule, or order*, for a stated period ending no later than February 1, 2021[.]

---

[17]    *See id.*

*See* Supreme Court of Texas, Twenty-Ninth Emergency Order Regarding the COVID-19 State of Disaster, Misc. Docket No. 20-9135, --- S.W.3d ---, 2020 WL 8881660, at *1 (Tex. Nov. 11, 2020) (emphasis added).

On November 30, 2020, Ramos filed his third motion for extension of time to serve an expert report "pursuant to the Texas Supreme Court's Twenty-Ninth Emergency Order." In accord with the Texas Supreme Court's emergency order, Ramos requested that the trial court extend the deadline for him to serve an expert report to February 1, 2021. Ramos noted that his trial counsel had tested positive for COVID-19 in August 2020 and had missed work due to quarantining. The trial court granted Ramos's third motion for extension of time to serve an expert report and ordered Ramos to serve his expert report on Dr. Kim by February 1, 2021.

Despite the Texas Supreme Court's emergency orders, Dr. Kim moved to dismiss Ramos's health care liability claim against him for failure to timely serve him with an expert report. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) ("In a health care liability claim, a claimant shall, not later than the 120th day after the date each defendant's original answer is filed, serve on that party or the party's attorney one or more expert reports, with a curriculum vitae of each expert listed in the report for each physician . . . against whom a liability claim is asserted."). Dr. Kim asserted that "Texas law [was] clear that if a sufficient expert report [was not] served within the 120[-]day post-filing deadline, [a plaintiff's health care liability]

20

claim[] against [a] defendant [physician] must be dismissed with prejudice and costs and attorney['s] fees awarded to th[e] defendant." According to Dr. Kim, Ramos had not served him with an expert report and Ramos was not entitled to extensions of time to serve an expert report under the Texas Supreme Court's emergency orders. The trial court denied Dr. Kim's motion to dismiss, stating that Ramos's deadline to serve an expert report on Dr. Kim had not yet expired.

On appeal, Dr. Kim argues that the trial court erred in denying his motion to dismiss Ramos's health care liability claim against him because Ramos did not serve an expert report on Dr. Kim within 120 days of the filing of Dr. Kim's original answer and the Texas Supreme Court's emergency orders did not automatically extend Ramos's expert report deadline "absent any evidence that COVID-19 prevented [Ramos] from timely compl[ying] with the expert report requirement."

Texas Government Code section 22.0035(b) allows the Texas Supreme Court to "modify or suspend procedures for the conduct of any court proceeding affected by a disaster during the pendency of a disaster declared by the governor." TEX. GOV'T CODE ANN. § 22.0035(b); *see also Lira*, --- S.W.3d ---, 2021 WL 924893, at *2 (noting Seventeenth Emergency Order Regarding COVID-19 State of Disaster enacted pursuant to authority granted to supreme court in Texas Government section 22.0035(b)). When the trial court granted Ramos's third motion for extension of time to serve an expert report and later denied Dr. Kim's motion to dismiss, the

Texas Supreme Court's Twenty-Ninth Emergency Order was in effect. The

Twenty-Ninth Emergency Order stated that,

> [s]ubject only to constitutional limitations, *all courts* in Texas *may in any case, civil* or criminal—and must to avoid risk to court staff, parties, attorneys, jurors, and the public—without a participant's consent: . . . *modify or suspend any and all deadlines and procedures, whether prescribed by statute*, rule, or order, for a stated period ending no later than February 1, 2021.

Supreme Court of Texas, Twenty-Ninth Emergency Order Regarding the COVID-19

State of Disaster, --- S.W.3d ---, 2020 WL 8881660, at *1 (emphasis added).

We interpret court orders, like the Texas Supreme Court's Twenty-Ninth

Emergency Order, according to the plain meaning of their terms. *See West Harwood*

*334B Land Trust v. Clement*, No. 02-20-00216-CV, 2021 WL 1229973, at *4–5

(Tex. App.—Fort Worth Apr. 1, 2021, no pet.) (mem. op.) (interpreting Texas

Supreme Court's Seventeenth Emergency Order Regarding COVID-19 State of

Disaster); *Estate of Hoskins*, 501 S.W.3d 295, 302, 304–05 (Tex. App.—Corpus

Christi–Edinburg 2016, no pet.) (construing court orders according to their "plain

terms"); *Clay Expl., Inc.*, 442 S.W.3d at 798 (court order must be construed based

on plain language of order).

Here, the plain language of the Texas Supreme Court's Twenty-Ninth

Emergency Order made clear that the trial court, in any civil case, "subject only to

22

constitutional limitations,"[18] had the authority to "modify or suspend any and all deadlines and procedures" prescribed by statute in any civil case. *See* Supreme Court of Texas, Twenty-Ninth Emergency Order Regarding the COVID-19 State of Disaster, --- S.W.3d ---, 2020 WL 8881660, at *1. In other words, the emergency order gave the trial court broad discretion to modify or suspend any deadlines and procedures prescribed by statute. *CBS Stations Grp. of Tex., LLC v. Burns*, No. 05-20-00700-CV, 2020 WL 7065827, at *2 (Tex. App.—Dallas Dec. 3, 2020, no pet.) (mem. op.) (noting "broad discretion" given to trial court by Texas Supreme Court's Seventeenth Emergency Order Regarding COVID-19 State of Disaster). This broad discretion to modify or suspend "any and all deadlines and procedures" prescribed by statute necessarily applies to those "deadlines and procedures" governing the time to serve an expert report under Texas Civil Practice and Remedies Code section 74.351(a). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a).

Thus, under its plain terms, the Texas Supreme Court's Twenty-Ninth Emergency Order permitted the trial court, in its broad discretion, to extend the deadline for Ramos to serve his expert report on Dr. Kim.[19] *See N. Cent. Baptist*

---

[18]   Dr. Kim does not assert that any "constitutional limitations" prohibited the trial court from extending the deadline for Ramos to serve his expert report on Dr. Kim.

[19]   The Texas Supreme Court's Twenty-Ninth Emergency Order *required* the trial court to extend "any and all deadlines and procedures" prescribed by statute when needed "to avoid risk to court staff, parties, attorneys, jurors, and the public"

23

*Hosp. v. Chavez*, No. 04-20-00590-CV, 2021 WL 983351, at *2 (Tex. App.—San Antonio Mar. 17, 2021, no pet.) (mem. op.) (Texas Supreme Court's Twenty-Ninth Emergency Order "*permitted* courts" to extend deadlines (emphasis added)); *Carrigan v. Edwards*, No. 13-20-00093-CV, 2020 WL 6504418, at *1–2 (Tex. App.—Corpus Christi–Edinburg Nov. 5, 2020, pet. denied) (mem. op.) (Texas Supreme Court's Eighteenth Emergency Order Regarding COVID-19 State of Disaster "*permit[ted]* courts to extend deadlines" (emphasis added)); *see also In re Rodriguez*, No. 05-20-00523-CV, 2020 WL 2487061, at *2 (Tex. App.—Dallas May 13, 2020, orig. proceeding) (noting "the unique and serious circumstances created by the COVID-19 pandemic require flexibility and adaptability in all aspects of [the] legal system").

Dr. Kim asserts that Ramos was required to present "evidence of the disaster's impact on [his] ability to meet . . . the [c]hapter 74 expert report deadline" and the

---

resulting from the COVID-19 pandemic. *See* Supreme Court of Texas, Twenty-Ninth Emergency Order Regarding the COVID-19 State of Disaster, --- S.W.3d ---, 2020 WL 8881660, at *1; *N. Cent. Baptist Hosp. v. Chavez*, No. 04-20-00590-CV, 2021 WL 983351, at *2 (Tex. App.—San Antonio Mar. 17, 2021, no pet.) (mem. op.); *Carrigan v. Edwards*, No. 13-20-00093-CV, 2020 WL 6504418, at *1–2 (Tex. App.—Corpus Christi–Edinburg Nov. 5, 2020, pet. denied) (mem. op.) (explaining Texas Supreme Court's Eighteenth Emergency Order Regarding COVID-19 State of Disaster required courts to extend deadlines when necessary to "to avoid risk to court staff, parties, attorneys, jurors, and the public resulting from the pandemic" (internal quotations omitted)). Ramos did not assert in the trial court and does not assert on appeal that the trial court was required to extend the deadline to serve his expert report under the mandatory portion of the Twenty-Ninth Emergency Order.

trial court, under the terms of the Texas Supreme Court's Twenty-Ninth Emergency Order, could not set Ramos's expert-report deadline for February 1, 2021 without "any evidence that COVID-19 prevented [Ramos] from timely compl[ying] with the expert report requirement." Yet the plain terms of the Texas Supreme Court's emergency order did not require Ramos to produce "evidence" that COVID-19 impacted his "ability to meet . . . the [c]hapter 74 expert report deadline" before the trial court could exercise its broad discretion to modify the deadline prescribed by Texas Civil Practice and Remedies Code section 74.351 for the service of an expert report. *See* Supreme Court of Texas, Twenty-Ninth Emergency Order Regarding the COVID-19 State of Disaster, --- S.W.3d ---, 2020 WL 8881660, at *1. The only restriction placed on the trial court's ability to modify or suspend a deadline or procedure under the Texas Supreme Court's emergency order is a "constitutional" one. *See id.* ("Subject *only to constitutional limitations*, all courts in Texas may in any case, civil or criminal . . . modify or suspend any and all deadlines and procedures, whether prescribed by statute, rule, or order . . . ." (emphasis added)).

To support his assertions on appeal, Dr. Kim relies on cases involving emergency orders issued by the Texas Supreme Court after Hurricane Harvey[20] and

---

[20] *See In re EP Floors Corp.*, No. 14-18-00610-CV, 2018 WL 4354688, at *1 (Tex. App.—Houston [14th Dist.] Sept. 13, 2018, orig. proceeding) (mem. op.) ("In late August 2017, Hurricane Harvey hit the Texas Gulf Coast, causing damage throughout Texas . . . .").

25

Hurricane Rita.[21] *See Franklin v. Longview Med. Ctr., L.P.*, No. 12-18-00198-CV, 2019 WL 2459020, at *3–4 (Tex. App.—Tyler June 5, 2019, pet. denied) (mem. op.) (Hurricane Harvey); *Pollard v. Walgreen, Co.*, No. 09-06-447-CV, 2007 WL 2493489, at *1–2 (Tex. App.—Beaumont Sept. 6, 2007, pet. denied) (mem. op.) (Hurricane Rita). But the terms of the emergency orders issued by the Texas Supreme Court after those hurricanes are notably different from the terms prescribed by the supreme court in Twenty-Ninth Emergency Order. *Cf.* Supreme Court of Texas, Emergency Order Authorizing Modification and Suspension of Court Procedures in Proceedings Affected by Disaster, Misc. Docket No. 17-010 (Tex. Aug. 28, 2017) (after Hurricane Harvey, allowing courts to consider "*disaster-caused delays* as good cause for modifying or suspending all deadlines and procedures—whether prescribed by statute, rule, or order—in any case, civil or criminal" (emphasis added)); Supreme Court of Texas, Emergency Order on Enlargement of Time, Misc. Docket No. 05-9168 (Tex. Sept. 26, 2005) (allowing enlargement of time for deadlines prescribed in Texas Rules of Civil Procedure and Texas Rules of Appellate Procedure and specifying that request for enlargement of

---

[21]     *See Mendoza v. State*, No. 14-15-00537-CR, 2016 WL 3341107, at *2 n.2 (Tex. App.—Houston [14th Dist.] June 14, 2016, no pet.) (mem. op., not designated for publication) ("Hurricane Rita made landfall in September 2005."); *Rangel v. Martinez*, No. 04-06-00032-CV, 2007 WL 1200007, at *3 (Tex. App.—San Antonio Apr. 25, 2007, no pet.) (mem. op.) (noting, in September 2005, "[t]ropical storm Rita beg[an] forming in the Gulf [of Mexico], increasing in intensity from a depression to a hurricane, and ultimately peaking at a category 5 hurricane").

time must be due to lawyers' inability to respond to deadlines "*because of*" Hurricane Rita (emphasis added)).  We must construe the Twenty-Ninth Emergency Order based on its plain terms, not based on the terms of previous emergency orders issued by the Texas Supreme Court in response to other disasters.  *See Clement*, 2021 WL 1229973, at *4–5; *Estate of Hoskins*, 501 S.W.3d at 302, 304–05; *Clay Expl., Inc.*, 442 S.W.3d at 798.

The Texas Supreme Court's Twenty-Ninth Emergency Order allowed the trial court to extend the time for Ramos to serve his expert report on Dr. Kim to February 1, 2021.  When Dr. Kim moved to dismiss Ramos's health care liability claim, asserting that Ramos had failed to timely serve him with an expert report, Ramos's expert report was not yet due.  A motion to dismiss for failure to timely serve an expert report cannot be granted until the deadline for filing the expert report has passed.  *See Stonebrook Manor SNF LLC v. Mendoza*, No. 04-19-00780-CV, 2020 WL 3547986, at *2 (Tex. App.—San Antonio July 1, 2020, no pet.) (mem. op.); *see also Lewis v. Funderbuck*, 253 S.W.3d 204, 207 (Tex. 2008) (defendant physician cannot seek dismissal until after window for serving expert report has closed; "[o]nly when that window has closed and no report has been filed can a defendant move for dismissal and fees under [Texas Civil Practice and Remedies Code section 74.351(b)]"); *Davies v. Flores*, No. 01-12-00017-CV, 2012 WL 1893755, at *2 (Tex. App.—Houston [1st Dist.] May 24, 2012, no pet.) (mem. op.).  Because

27

Ramos's expert report was not yet due, we hold that the trial court did not err in denying Dr. Kim's motion to dismiss Ramos's health care liability claim against Dr. Kim.

We overrule Dr. Kim's second issue.[22]

## Conclusion

We affirm the order of the trial court denying Dr. Kim's motion to dismiss. We dismiss for lack of jurisdiction Dr. Kim's appeal from the trial court's October 23, 2020 and December 14, 2020 interlocutory orders granting Ramos's second and third motions for extension of time to serve an expert report.

Julie Countiss
Justice

Panel consists of Chief Justice Radack and Justices Landau and Countiss.

---

[22] Due to our disposition, we need not address Dr. Kim's request for attorney's fees and costs. *See* TEX. R. APP. P. 47.1.